FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 15 2008

Stephan Harris, Clerk
Cheyenne

JOHN R. GREEN
Interim United States Attorney

CAROL A. STATKUS
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JAMES D. FREEMAN
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, Eighth Floor
Denver, Colorado 80294
Telephone: (303) 844-1489

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 08 C V  0 2 0 -D |
| ) | |
| SINCLAIR WYOMING REFINING COMPANY, ) | **COMPLAINT** |
| SINCLAIR CASPER REFINING COMPANY, ) | |
| and SINCLAIR TULSA REFINING COMPANY, ) | |
| ) | |
| Defendants. ) | |

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), alleges the following:

## NATURE OF ACTION

1. This is a civil action brought by the United States against Sinclair Tulsa Refining

Company, Sinclair Wyoming Refining Company and Sinclair Casper Refining Company

(collectively "Sinclair"), under Section 113(b) of the Clean Air Act ("CAA" or "the Act"), 42

U.S.C. § 7413(b); Section 103(a) of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9603(a); and Section 304 of the

Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004, for

alleged environmental violations at Sinclair's petroleum refineries located in Casper and Sinclair,

Wyoming, and in Tulsa, Oklahoma (collectively the "Covered Refineries").

2.   Upon information and belief, the Covered Refineries have been and are in violation of

the following environmental statutes and regulations applicable to the petroleum refining

industry:

(1) the CAA, 42 U.S.C. § 7401 *et seq.*, specifically Prevention of Significant

Deterioration ("PSD"), Part C of Subchapter I of the Act, 42 U.S.C. § 7475, and the regulations

promulgated thereunder at 40 C.F.R. § 52.21 (the "PSD Rules"), and the regulations promulgated

at 40 C.F.R. § 51.165, Part 51, Appendix 5, and § 52.24 ("PSD/NSR Regulations"); New Source

Performance Standards ("NSPS"), 40 C.F.R. Part 60, Subpart A and J, Section 111 of the Act, 42

U.S.C. § 7411 ("Refinery NSPS Regulations"); Leak Detection and Repair ("LDAR"), 40 C.F.R.

Parts 60 Subparts VV and GGG, Part 61 Subparts J and V, and Part 63 Subpart F, H, and CC,

Section 111 and 112 of the Act, 42 U.S.C. § 7411 ("LDAR Regulations"); National Emission

Standards for Hazardous Air Pollutants ("NESHAP") for Benzene, Section 112 of the Act, 40

C.F.R. Part 61 Subpart FF ("Benzene Waste NESHAP Regulations"); and the Wyoming and

Oklahoma State Implementation Plans ("SIPs") which incorporate and/or implement the above-

listed federal regulations;

(2) Section 103(a) of CERCLA, 42 U.S.C. § 9603(a); and the Emergency Planning and

Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11004(a).

3. The United States seeks an injunction ordering Sinclair to comply with the above

statutes and the laws and regulations promulgated thereunder, and civil penalties for defendants'

past and ongoing violations.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331,

1345 and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Sections 109(c) and 113(b) of

CERCLA, 42 U.S.C. §§ 9609(c), 9613(b); and Section 325(b)(3) of EPCRA, 42 U.S.C. §

11045(b)(3).

5.  Venue is proper in the District of Wyoming pursuant to 28 U.S.C. §§ 1391(b), (c), and 1395(a); Section 113(b) of the CAA, 42 U.S.C. § 7413(b);  Sections 109(c) and 113(b) of the CERCLA, 42 U.S.C. §§ 9609(c), 9613(b); and Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), because the defendants reside in this judicial district.

## AUTHORITY AND NOTICE TO STATES

6.  Authority to bring this action is vested in the United States Department of Justice pursuant to Section 113(b) and 305 of the CAA, 42 U.S.C. §§ 7413(b) and 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

7.  Pursuant to Section 113(a)(1) of the CAA,  42 U.S.C. § 7413(a)(1), notice of the violations of the Wyoming and Oklahoma SIPs that are alleged in this complaint have been given to the States of Wyoming and Oklahoma, and Sinclair at least 30 days prior to the filing of this complaint.

8.  Pursuant to Section 113(b) of the CAA, 42. U.S.C. § 7413(b), notice of the commencement of this action has been given to the appropriate state air pollution control agency in the States of Wyoming and Oklahoma.

## DEFENDANTS

9.  Sinclair Tulsa Refining Company, Sinclair Wyoming Refining Company and Sinclair

-4-

Casper Refining Company (collectively the "Sinclair Companies") are Wyoming corporations

doing business in either Wyoming and Oklahoma.  The Sinclair Tulsa Refining Company is

engaged in the petroleum business, and owns and operates a refinery located in Tulsa, Oklahoma

(the "Sinclair Tulsa Refinery").  The Sinclair Companies are owned by Sinclair Oil Corporation,

incorporated in Wyoming with its headquarters in Salt Lake City, Utah.  The Sinclair Wyoming

Refining Company is engaged in the petroleum business, and owns and operates a refinery

located in Sinclair, Wyoming (the "Sinclair Wyoming Refinery").  The Sinclair Casper Refining

Company is engaged in the petroleum business, and owns and operates a refinery located in

Casper, Wyoming (the "Sinclair Casper Refinery").  Allegations set forth in this Complaint that

reference the Sinclair Tulsa Refinery relate to the Sinclair Tulsa Refining Company; allegations

that reference the Sinclair Wyoming Refinery relate to the Sinclair Wyoming Refining Company;

and allegations that reference the Sinclair Casper Refinery relate to the Sinclair Casper Refining

Company.

10. For the purposes of Section 113(b) of the CAA, 42 U.S.C. § 7413(b), each of the

Sinclair Companies is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e),

Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and applicable federal and state regulations

promulgated pursuant to these statutes.  Each of the Sinclair Companies is an "owner or

operator" of one of the Covered Refineries within the meaning of Section 304(a) and (b) of

-5-

EPCRA, 42 U.S.C. § 11004(a), (b), or 329(7) of EPCRA, 42 U.S.C. § 11049(7).

## STATUTORY AND REGULATORY BACKGROUND

### CLEAN AIR ACT REQUIREMENTS

11. The Clean Air Act established a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

12. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants. The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13. Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

14. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. These designations have been approved by EPA and are located at 40 C.F.R.

-6-

Part 81. An area that meets the NAAQS for a particular pollutant is classified as an "attainment" area; one that does not is classified as a "non-attainment" area.

### Prevention of Significant Deterioration/New Source Review

15. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process.  These provisions are referred to herein as the "PSD program."

16. Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment unless a PSD permit has been issued.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), defines "major emitting facility" as a source with the potential to emit 250 tons per year (tpy) or more of any air pollutant.

17. As set forth at 40 C.F.R. § 52.21(k), the PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate,

before construction commences, that construction of the facility will not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental amount.

18. As set forth at 40 C.F.R. § 52.21(i), any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit. "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act. "Significant" is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions increase or the potential of a source to emit any of the following criteria pollutants, at a rate of emissions that would equal or exceed any of the following: for ozone, 40 tons per year of volatile organic compounds (VOCs); for carbon monoxide (CO), 100 tons per year; for nitrogen oxides ($NO_x$), 40 tons per year; for sulfur dioxide ($SO_2$), 100 tons per year, (hereinafter "criteria pollutants").

19. As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major modification in an attainment area shall install and operate best available control technology ("BACT") for each pollutant subject to regulation under the Act that it would have the potential to emit in significant quantities.

20. Section 161 of the Act, 42 U.S.C. § 7471, requires SIPs to contain emission limitations and such other measures as may be necessary, as determined under the regulations

promulgated pursuant to these provisions, to prevent significant deterioration of air quality in attainment areas.

21. A state may comply with Section 161 of the Act either by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved as part of its SIP by EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

22. Pursuant to PSD regulations, any owner or operator who commences construction or modification of a major source without applying for and receiving approval for such construction or modification is subject to an enforcement action. 40 C.F.R. § 51.166.

23. Pursuant to Section 113(b)(1) of the CAA, 42 U.S.C. § 7413(b)(1), the violation of any requirement or provision of an applicable implementation plan is a violation of the CAA.

24. Whenever any person has violated, or is in violation of, any requirement or prohibition of any SIP, Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. §

2461, as amended.

## Flaring and New Source Performance Standards

25. Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the

Administrator of EPA to publish a list of categories of stationary sources that emit or may emit

any air pollutant. The list must include any categories of sources which are determined to cause

or significantly contribute to air pollution which may endanger public health or welfare.

26. Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the

Administrator of the EPA to promulgate regulations establishing federal standards of

performance for new source of air pollutants within each of these categories. "New Sources" are

defined as stationary sources, the construction or modification of which is commenced after the

publication of the regulations or proposed regulations prescribing a standard of performance

applicable to such source. 42 U.S.C. § 7411(b).

27. Pursuant to Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), EPA has

identified petroleum refineries as one category of stationary sources that cause, or contribute

significantly to, air pollution that may reasonably be anticipated to endanger public health or

welfare.

28. Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), EPA has

promulgated New Source performance Standards ("NSPS") for various industrial categories,

-10-

including petroleum refineries.  NSPS requirements for petroleum refineries are codified in 40

C.F.R. Part 60, Subpart J, §§ 60.100-60.109.

29. The provisions of 40 C.F.R. Part 60 Subpart J apply to specified "affected

facilities," including, *inter alia*, fuel gas combustion devices that commenced construction or

modification after June 11, 1973.  40 C.F.R. § 60.100(a),(b).

30.  40 C.F.R. § 60.104(a)(1) prohibits the burning in any fuel gas combustion device

of any fuel gas that contains hydrogen sulfide in excess of 230 milligrams per dry standard cubic

meter, or, stated in terms of grains per dry standard cubic foot, 0.10.  The combustion in a flare of

process upset gases or fuel gas that is released to the flare as a result of relief valve leakage or

other emergency malfunctions is exempt from the emission limit of 40 C.F.R. § 60.104(a)(1).

31.  Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA has

promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19,

that apply to owners or operators of any stationary source that contains an "affected facility"

subject to regulation under 40 C.F.R. Part 60.

32.  40 C.F.R. § 60.11(d) requires that at all times, including periods of startup,

shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and

operate any affected facility including associated air pollution control equipment in a manner

consistent with good air pollution control practice for minimizing emissions.

33.  Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits the operation of any

-11-

new source in violation of an NSPS applicable to such source.  Thus, a violation of an NSPS is a

violation of Section 111(e) of the CAA.

34.  Whenever any person has violated, or is in violation of, any requirement or

prohibition of any applicable New Source Performance Standard, Section 113(b) of the Act, 42

U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a

permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each

violation occurring before January 31, 1997; up to $27,500 per day for each such violation

occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each

such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

### Leak Detection and Repair

35.  Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, EPA promulgated New

Source Performance Standards for Equipment Leaks of VOCs in Petroleum Refineries at 40

C.F.R. Part 60, Subpart GGG.  Subpart GGG, in turn, incorporated many of the NSPS standards

at 40 C.F.R. Part 60, Subpart VV.  Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA

promulgated emission standards for hazardous air pollutants ("National Emission Standards for

Hazardous Air Pollutants" or "NESHAPs") at 40 C.F.R. Part 61, and NESHAPs for source

categories at 40 C.F.R. Part 63.  The relevant NESHAPs are found at 40 C.F.R. Part 61,

Subpart J (for equipment leaks of benzene) and Subpart V (for equipment leaks); and 40 C.F.R.

-12-

Part 63, Subpart F (for organic hazardous air pollutants from the synthetic organic chemical manufacturing industry), Subpart H (for organic hazardous air pollutants for equipment leaks) and Subpart CC (for hazardous air pollutants from petroleum refineries).

36. The focus of the LDAR program is the refinery-wide inventory of all possible leaking equipment, the regular monitoring of that equipment to identify leaks, and the repair of leaks as soon as they are identified.

37. Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable New Source Performance Standard or any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

### Benzene Waste NESHAP

38. The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

39. In March 1990, EPA promulgated national emission standards applicable to benzene-

-13-

containing waste waters. Benzene is a listed HAP and a known carcinogen. The benzene waste

regulations are set forth at 40 C.F.R. Part 61 Subparts FF, (National Emission Standard for

Benzene Waste Operations). Benzene is a naturally-occurring constituent of petroleum product

and petroleum waste and is highly volatile. Benzene emissions can be detected anywhere in a

refinery where the petroleum product or waste materials are exposed to the ambient air.

40. Pursuant to the Benzene waste NESHAP, refineries are required to tabulate the total

annual benzene ("TAB") content in their wastewater. If the TAB is over 10 Mg per year, the

refinery is required to elect a control option for control of benzene.

41. Whenever any person has violated, or is in violation of, any requirement or

prohibition of any applicable National Emission Standard for a Hazardous Air Pollutant, Section

113(b) of the CAA, 42 U.S.C. § 7413(b), Section 113(b) of the Act, 42 U.S.C. § 7413(b),

authorizes the Administrator to initiate a judicial enforcement action for a permanent or

temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation

occurring before January 31, 1997; up to $27,500 per day for each such violation occurring on or

after January 31, 1997 and before March 15, 2004; and up to $32,500 for each such violation

occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act

of 1990, 28 U.S.C. § 2461, as amended.

## CERCLA REQUIREMENTS

42. Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires a person in charge of a

facility to immediately notify the National Response Center of a release of a hazardous substance from such facility in an amount equal to or greater than the amount determined pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602 (the "reportable quantity").

43. Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), provides that any person who violates the notice requirements of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), shall be liable to the United States for civil penalties.

## EPCRA REQUIREMENTS

44. Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), (b),  requires the owner and operator of a facility at which a hazardous chemical is produced, used, or stored, to immediately notify the State Emergency Response Commission ("SERC") and the Local Emergency Planning Committee ("LEPC") of certain specified releases of a hazardous or extremely hazardous substance.

45. Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), requires that, as soon as practicable after a release which requires notice under Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), the owner or operator shall provide a written follow up emergency notice providing certain specified additional information.

46. Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), provides that any person who violates any requirement of Section 304 of EPCRA, 42 U.S.C. § 11004, shall be liable to the United States for civil penalties.

## FIRST CLAIM FOR RELIEF
### (CAA PSD/NSR Violations at FCCUs)

47.  Paragraphs 1 though 46 are re-alleged and incorporated by reference as is fully set forth herein.

48.  Each of the Sinclair Companies owns and operates one or more FCCU regenerators at the Tulsa, Sinclair or Casper Refineries.

49.  Upon information and belief, each of the Sinclair Companies has modified one or more FCCU regenerators at the Tulsa, Sinclair or Casper Refineries.

50.  Upon information and belief, each modification to each FCCU regenerator at the Tulsa, Sinclair and Casper Refineries was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) to existing major stationary sources that resulted in a significant net emissions increase of: NOx, $SO_2$,  PM, and CO from each FCCU regenerator.

51.  Since the initial construction or major modification of each FCCU regenerator at the Tulsa, Sinclair or Casper Refineries, each of the Sinclair Companies has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), 40 C.F.R. § 52.21, and the Wyoming or Oklahoma SIP, by 1) failing to undergo PSD/NSR review for each FCCU, 2) failing to obtain permits, and 3) failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

52.  Unless restrained by an Order of the Court, these violations of the Clean Air Act and

the implementing regulations will continue.

53.  The violations set forth above subject the defendants to injunctive relief and civil

penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to

January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or

after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA,

Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for

each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L.

104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

**SECOND CLAIM FOR RELIEF**
**(NSPS Violations at FCCUs)**

54.  The allegations in Paragraphs 1 through 53 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

55.  Each of the Sinclair Companies is the "owner or operator," within the meaning of

Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of one or more

FCCU regenerators at the Tulsa, Sinclair or Casper Refineries.

56.  Each FCCU regenerator at the Tulsa, Sinclair and Casper Refineries is a "fluid

catalytic cracking unit catalyst regenerator" as defined in 40 C.F.R. § 60.101(n), and a "stationary

source" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C.

§§ 7411(a)(3) and 7602(z).

-17-

57. Each FCCU regenerator at the Tulsa, Sinclair and Casper Refineries is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

58. Each FCCU regenerator at the Tulsa, Sinclair and Casper Refineries is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60, Subpart J.

59. Each FCCU regenerator at the Tulsa, Sinclair and Casper Refineries is subject to the emission limits set forth in 40 C.F.R. §§ 60.102(a), 60.103(a), and 60.104(b).

60. Upon information and belief, each of the Sinclair Companies has violated 40 C.F.R. §§ 60.102(a), 60.103(a), and 60.104(b), and thus Section 111 of the CAA, by not complying with the emissions standards set forth in those sections for FCCU regenerators at the Tulsa, Sinclair or Casper Refineries.

61. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

62. The violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for

-18-

each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L.

104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

### THIRD CLAIM FOR RELIEF
(NSPS Violations at SRPs)

63.  The allegations in Paragraphs 1 through 62 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

64.  Each of the Sinclair Companies is the "owner or operator," within the meaning of

Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of one or more

SRPs at the Tulsa, Sinclair or Casper Refineries.

65.  Each SRP at the Tulsa, Sinclair and Casper Refineries is a "Claus sulfur recovery

plant" as defined in 40 C.F.R. § 60.101(i), and a "stationary source" within the meaning of

Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

66.  Each SRP at the Tulsa, Sinclair and Casper Refineries has a capacity of more than 20

long tons of sulfur per day.

67.  Each SRP at the Tulsa, Sinclair and Casper Refineries is an "affected facility" within

the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and a "new source" within the meaning of

Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

68.  Each SRP at the Tulsa, Sinclair and Casper Refineries is subject to the General

Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for

Petroleum Refineries, 40 C.F.R. Part 60, Subpart J.

69. Each SRP at the Tulsa, Sinclair and Casper Refineries is subject to the emission limit set forth in 40 C.F.R. § 60.104(a)(2)(i).

70. Upon information and belief, each of the Sinclair Companies has emitted into the atmosphere gases containing in excess of 1) 250 ppm by volume (dry basis) of $SO_2$ at zero percent excess air, or 2) 300 ppm by volume of reduced sulfur compounds, from each of the SRPs at the Refineries, in violation of 40 C.F.R. § 60.104(a)(2) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

71. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

72. The violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on or before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134, and 69 Fed. Reg. 7121 (February 13, 2004).

## FOURTH CLAIM FOR RELIEF
### (CAA PSD/NSR Violations at Heaters and Boilers)

73.  Paragraphs 1 through 72 are re-alleged and incorporated by reference as if fully set forth herein.

74.  The Sinclair Companies own and operate the Tulsa, Sinclair and Casper Refineries, which each involve the physical, thermal, and chemical separation of crude oil into marketable petroleum products or asphalt. The Sinclair Companies own and operate heaters and boilers at the Tulsa, Sinclair or Casper Refineries.

75.  Based on information and belief, the United States alleges the following:

76. The Sinclair Companies' petroleum and asphalt refining processes result in emissions of significant quantities of criteria air pollutants, including nitrogen oxides ("NOx"), carbon monoxide ("CO"), particulate matter ("PM"), sulfur dioxide ("$SO_2$"), as well as volatile organic compounds ("VOCs") and hazardous air pollutants ("HAPs"), including benzene. The primary sources of these emissions are process heaters and boilers.

77.  Each of the Tulsa, Sinclair and Casper Refineries are "petroleum refineries" in accordance with Section 169(1) of the CAA, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources as a source with the potential to emit 100 tpy or more of any criteria air pollutant. The Sinclair Companies' petroleum refineries are major emitting facilities with the potential to emit in excess of 100 tpy of NOx, PM, and $SO_2$ which are listed

-21-

criteria air pollutants.

78. At all times relevant to this Complaint, each of the Tulsa, Sinclair and Casper Refineries is located in an area designated as "Class II" under Section 162(b) of the Act, 42 U.S.C. § 7472(b), and that have attained the National Ambient Air Quality Standards for Ozone, of which NOx is a precursor, $SO_2$, and PM under Section 107(d) of the Act, 42 U.S.C. § 7407(d).

79. At all times relevant to the Complaint, and on numerous occasions since the commencement of operations, the Sinclair Companies have failed to fully and accurately identify the emissions from the Tulsa, Sinclair and/or Casper petroleum refineries of one or more criteria pollutants.

80. During the time period relevant to this Complaint, upon information and belief, the Sinclair Companies have modified their heaters and boilers at the Tulsa, Sinclair and/or Casper Refineries.

81. Upon information and belief, each modification was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) to existing major stationary sources that resulted in a significant net emissions increase of NOx and $SO_2$ from the heaters and boilers.

82. Since the initial construction or major modification of the heaters and boilers, each of the Sinclair Companies has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the corresponding state implementation plans, by failing to undergo PSD/NSR review for the heaters and boilers, by failing to obtain permits, and by failing to install

-22-

the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

83. Unless restrained by an Order of the Court, these violations of the Clean Air Act and the implementing regulations will continue.

84. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## FIFTH CLAIM FOR RELIEF
### (CAA/NSPS Violations at Flaring Devices and Heaters and Boilers)

85. The allegations in Paragraphs 1 through 84 are hereby re-alleged and incorporated by reference as if fully set forth herein.

86. The Sinclair Companies are each an "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of flaring devices and heaters and boilers located at the Tulsa, Sinclair or Casper Refineries.

87. The flaring devices and heaters and boilers are "fuel gas combustion devices" as

-23-

defined in 40 C.F.R. § 60.101(g), and "stationary sources" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

88. The flaring devices and heaters and boilers are "affected facilities" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and "new sources" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

89. The flaring devices and heaters and boilers are subject to the emission limitation set forth in 40 C.F.R. § 60.104(a)(1).

90. Each of the Sinclair Companies has burned in the flaring devices and heaters and boilers at the Tulsa, Sinclair or Casper Refineries, fuel gas that contained hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10, in violation of 40 C.F.R. § 60.104(a)(2) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

91. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

92. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March

15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. §

2461, as amended.


### SIXTH CLAIM FOR RELIEF
#### (CAA/NSPS:  40 C.F.R. § 60.11(d))
#### (Failing to Operate and Maintain the
#### the Heaters and Boilers and the Flaring Devices
#### in a Manner Consistent with Good Air Pollution Control Practice)

93.  The allegations in Paragraphs 1 through 92 are hereby re-alleged and incorporated by
reference as if fully set forth herein.

94.  Upon information and belief, each of the Sinclair Companies has emitted
unpermitted quantities of NOx and $SO_2$ from its respective heaters and boilers at the Tulsa,
Sinclair or Casper Refineries.  These pollutants were emitted under circumstances that did not
represent good air pollution control practices, in violation of 40 C.F.R. § 60.11(d).

95.  Unless restrained by an order of the Court, these violations of the Act and the
implementing regulations will continue.

96.  As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of
the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive
relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to
January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January

31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring

after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990,

28 U.S.C. § 2461, as amended.

## SEVENTH CLAIM FOR RELIEF
### (Leak Detection and Repair Requirements)

97.  The allegations in Paragraphs 1 through 96 are re-alleged and incorporated by

reference as if fully set forth herein.

98.  The Tulsa, Sinclair and Casper Refineries are required under 40 C.F.R. Part 60,

Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which references

standards set forth at 40 C.F.R. §§ 60.482-1 to 60.482-10, and alternative standards set forth at

40 C.F.R. §§ 60.483-1 to 60.483-2, for certain refinery equipment in light liquid and gas and/or

vapor service, constructed or modified after January 4, 1983.

99.  Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or operator of valves in light liquid

and gas and/or vapor service must initially comply with the leak detection monitoring and repair

requirements set forth in 40 C.F.R. § 60.482-7, including the use of Standard Method 21 to

monitor for such leaks.

100.  Pursuant to 40 C.F.R. Part 61 Subpart J, the Sinclair Companies are required to

comply with the requirements set forth in 40 C.F.R. Part 61, Subpart V, for certain refinery

equipment in light liquid and gas and/or vapor benzene service.

-26-

101. Upon information and belief, the Sinclair Companies have failed to accurately monitor the valves and other components in light liquid and gas and/or vapor service at the Tulsa, Sinclair and/or Casper Refineries as required by Standard Method 21, to report the valves and other components in light liquid and gas and/or vapor service that were leaking, and to repair all leaking VOC valves and other components in light liquid and gas and/or vapor service in a timely manner.

102. Upon information and belief, the Sinclair Companies' acts or omissions referred to in the preceding Paragraphs constitute violations of 40 C.F.R. Part 60, Subparts GGG and VV; 40 C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H, and CC.

103. Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

104. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January 31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## EIGHTH CLAIM FOR RELIEF
### (Benzene Waste NESHAP)

105. The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

106. Upon information and belief, the Sinclair Wyoming and Sinclair Tulsa Refineries have Total Annual Benzene ("TAB") of over 10 mg/yr, and have been subject to the requirements of the Benzene Waste NESHAP set forth at 40 C.F.R. § 61.342. At all times relevant to this Complaint, the Sinclair Casper Refining Company has asserted that the TAB at the Sinclair Casper Refinery is less than 10 megagrams per year, and is not subject to the control requirements of 40 C.F.R. § 61.342.

107. Upon information and belief, the Sinclair Wyoming and Sinclair Tulsa Refineries have failed to comply with the requirements of 40 C.F.R. § 61.342 by exceeding the benzene quantity limits set forth therein, in violation of the Benzene Waste NESHAP regulations and the Act. Upon information and belief, the Sinclair Casper Refinery has failed to comply with the requirements of the Benzene Waste NESHAP that are applicable to facilities with a TAB of less than 10 megagrams per year.

108. Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

109. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of

the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendants to injunctive

relief and civil penalties of up to: (1) $25,000 per day for each violation occurring prior to

January 31, 1997; (2) up to $27,500 per day for each such violation occurring on or after January

31, 1997 and before March 15, 2004; and (3) up to $32,500 for each such violation occurring

after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990,

28 U.S.C. § 2461, as amended.

## NINTH CLAIM FOR RELIEF
### (CERCLA)

110. Paragraphs 1 through 109 are re-alleged and incorporated by reference as if fully set

forth herein.

111.    Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires a person in charge of a

facility to immediately notify the National Response Center of a release of a hazardous substance

from such facility in an amount equal to or greater than the amount determined pursuant to

Section 102 of CERCLA, 42 U.S.C. § 9602 (the "reportable quantity").

112. The Sinclair Companies are "in charge of" the Tulsa, Sinclair and Casper

Refineries, within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

113. Upon information and belief, the Sinclair Companies have failed to immediately

notify the National Response Center of releases from the Tulsa, Sinclair or Casper Refineries of

hazardous substances in an amount equal to or greater than the reportable quantity for those

substances.

114. The acts or omissions referred to in the preceding paragraph constitute violations of Section 103(a) of CERCLA, 42 U.S.C. § 9603.

115. Pursuant to Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), the Sinclair Companies are liable for a civil penalty of up to: (1) $25,000 per day for each day each violation of Section 103(a) of CERCLA continues, and (2) up to $75,000 per day for each day that any second or subsequent violation continues.

**TENTH CLAIM FOR RELIEF**
**(EPCRA)**

116. Paragraphs 1 through 115 are re-alleged and incorporated by reference.

117. Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b), requires the owner and operator of a facility at which a hazardous chemical is produced, used, or stored, to immediately notify the State Emergency Response Commission ("SERC" – State Authority) and the Local Emergency Planning Committee ("LEPC" – Local Authority) of certain specified releases of a hazardous or extremely hazardous substance.

118. Each of the Sinclair Companies is the "owner and operator" of the Tulsa, Sinclair or Casper Refineries within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b).

119. Each of the Tulsa, Sinclair and Casper Refineries is a "facility" at which "hazardous

chemicals" are produced, used, or stored, within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 11004(a), (b).

120. Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), requires that, as soon as practicable after a release which requires notice under Section 304(a) of EPCRA, 42 U.S.C. § 11004(a), the owner or operator shall provide a written follow up emergency notice providing certain specified additional information.

121. Upon information and belief, there have been "releases" of "hazardous substances" within the meaning of Section 304(a) and (b) of EPCRA, 42 U.S.C. § 1104(a), (b), at the Tulsa, Sinclair and Casper Refineries. These hazardous substances included, without limitation, hydrogen sulfide, anhydrous ammonia, and sulfur dioxide, and were released in an amount greater than the reportable quantity. On each of these occasions, the Sinclair Companies have failed to immediately notify the SERC (State Authority) of a release of a hazardous or extremely hazardous substance as required by Section 304(a) of EPCRA, 42 U.S.C. § 11004(a); and to immediately notify the LEPC (Local Authority) of a release of a hazardous or extremely hazardous substance as required by Section 304(a) of EPCRA, 42 U.S.C. § 11004(a).

122. The acts or omissions referred to in the preceding paragraphs constitute violations of Section 304 of EPCRA, 42 U.S.C. § 11004(a), (b).

123. Pursuant to Section 325(b) of EPCRA, 42 U.S.C. § 11045(b)(3), each of the Sinclair Companies is liable for civil penalties in an amount not to exceed $25,000 per day for each day

the violation continues and in an amount not to exceed $75,000 per day for each day that any second or subsequent violation continues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1. Order the Sinclair Companies to immediately comply with the statutory and regulatory requirements cited in this Complaint, under the CAA, CERCLA and EPCRA;

2. Order the Sinclair Companies to take appropriate measures to mitigate the effects of its violations;

3. Assess civil penalties against the Sinclair Companies for up to the maximum amounts provided in the applicable statutes; and

4. Grant the United States such other relief as this Court deems just and proper.

Respectfully submitted,

Date: 28 Dec, 2007

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

-32-

Date: 1/10/08

JAMES D. FREEMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
1961 Stout Street, Eighth Floor
Denver, Colorado 80294
Telephone: (303) 844-1489
Facsimile: (303) 844-1350

JOHN R. GREEN
Interim United States Attorney

Date: Jan. 15, 2008

CAROL A. STATKUS
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124

-33-